Guerin Mills, Inc., Respondent, *v.* William M. Bar-
rett, as President of the Adams Express Company,
Appellant.

(Argued October 1, 1930; decided November 18, 1930.)

*Branch P. Kerfoot* for appellant. There was no agent of defendant to receive service of process on April 25. 1921. (*Caledonia Coal Co.* v. *Baker*, 196 U. S. 432; *Hexter* v. *Day Elder Motors*, 192 App. Div. 394; *Lathrop-Shea & Henwood Co.* v. *Interior Const. & Imp. Co.*, 150 Fed. Rep. 666; *Cady* v. *Associated Colonies*, 119 Fed. Rep. 420; *People* v. *Commercial Alliance*, 7 App. Div. 297; *Crutcher* v. *Kentucky*, 141 U. S. 47.)

*H. Kirby Grafton* for respondent. The defendant was properly served in the Rhode Island action. (*Mutual Reserve Fund Life Assn.* v. *Phelps*, 190 U. S. 147; *Meixell* v. *American Motor Car Sales Co.*, 181 Ind. 153; *Brown-Ketchum Iron Works* v. *Swift*, 53 Ind. App. 630; *Johnson* v. *Mutual Reserve Life Ins. Co.*, 45 Misc. Rep. 316; *Lathrop-Shea & Henwood Co.* v. *Interior Const. & Imp. Co.*, 150 Fed. Rep. 666; *Cady* v. *Associated Colonies*, 119 Fed. Rep. 420; *People* v. *Commercial Alliance*, 7 App. Div. 297; *Crutcher* v. *Kentucky*, 141 U. S. 47; *American Ry. Ex. Co.* v. *Kentucky*, 273 U. S. 269; *American Ry. Ex. Co.* v. *Royster Guano Co.*, 273 U. S. 274; *Lafayette Ins. Co.* v. *French*, 18 How. [U. S.] 404; *St. Clair* v. *Cox*, 106 U. S. 350.)

CARDOZO, Ch. J. Plaintiff, the assignee of the Alsace Worsted Company, brings this action upon a judgment for $1,540.57 recovered by its assignor in the Superior Court of Rhode Island against the Adams Express Company, an unincorporated association organized under the laws of New York. The question to be determined is whether the Rhode Island court had jurisdiction of the person.

On May 3, 1918, and again on June 3, 1918, the defendant carrier received from the Alsace Worsted Company cases of merchandise to be carried from Woonsocket, Rhode Island, to Philadelphia, Pennsylvania. The merchandise was lost in transit.

On June 30, 1918, the carrier terminated its business as an express company, and transferred to the American Railway Express Company the property then belonging to it in Rhode Island and elsewhere. It did this in obedience to an order of the Director General of Railroads, who acted in accordance with a proclamation of the President of the United States. The order was made in furtherance of the prosecution of the war. The new corporation took over the property not only of the Adams Express Company, but also of the other express companies operating in the United States, and assumed their liabilities (*American Railway Express Co. v. Royster Guano Co.*, 273 U. S. 274; *American Railway Express Co. v. Kentucky*, 273 U. S. 269).

On December 23, 1916, the defendant express company, while engaged in business in Rhode Island, filed in the office of the Secretary of State a power of attorney appointing an agent to accept service of process in its behalf. The appointment by its terms was "to continue in force for the period of time and in the manner provided by * * * the General Laws of Rhode Island, 1909, and until another attorney shall be substituted and appointed."

On September 5, 1919, more than a year after withdrawal from the State, the express company filed in the same office a written revocation of any and all authority theretofore conferred upon its agent.

On April 25, 1921, nearly two years after the revocation of the agency, the Alsace Worsted Company served upon the agent a writ or summons in an action against the defendant carrier to recover the value of the merchandise lost in transit. The carrier appeared specially for the sole purpose of vacating the service and contesting juris-

diction. Its objection was overruled, and judgment by default followed. The judgment so rendered is the one on which the plaintiff sues.

The power of attorney, in so far as it was merely a common-law appointment of an agent, was without vitality after the filing by the principal of the notice of revocation (Restatement of the Law of Agency, American Law Institute, §§ 180, 181). If vitality continued, it must have been by force of some obligation laid upon the carrier by the mandate of a statute. The plaintiff maintains that a statute intended to impose that obligation exists, and that it is binding on the defendant even as an inter-state carrier. The defendant denies that the statute was intended to continue the agency in force after the cessation of the business of the principal, and maintains that even if so intended it is void in any event in its application to commerce between the States. Upon the question of construction, the Superior Court held that the agency survived the cessation of business so long as there were existing causes of action that had their origin in business previously done. Upon the question of power, it held that the continuance of the agency after the cessation of business and notice of revocation did not lay an undue burden on interstate commerce.

The statute of Rhode Island (General Laws of 1909, ch. 189) provides that no foreign corporation or non-resident person or copartnership shall transport or engage in the transportation of any goods, wares, merchandise or parcels of any description within the State of Rhode Island until such corporation, person or copartnership shall have complied with the conditions thereby imposed. The conditions are that there shall be filed with the Secretary of State a written power of attorney appointing a citizen of Rhode Island an agent to accept service of process " in like manner as if such corporation had existed or such person or the members of such copartnership had been residents of and had been duly served with

process within the state;" that in case of the death, resignation or removal of the agent, a new appointment shall be made; and that no such power of attorney shall be revoked until after a like power to some competent person shall have been given and filed. With the power of attorney there must be filed a copy of the charter of the corporation or a list of the names and places of residence of all the members of the copartnership. Any person, corporation or copartnership violating any of the provisions of the statute is to forfeit five hundred dollars.

For the purpose of this appeal we assume, in deference to the holding of the Superior Court, that as to causes of action growing out of business transacted in Rhode Island the statute is to be read as continuing the agency though the business is at an end and the non-resident corporation or association has given notice of revocation and has withdrawn to its home. We assume, too, that in so far as the business so transacted is intrastate in character, the prolongation of the appointment is within the power of the State. In saying this, we pass over possible distinctions, even in respect of business of that order, between conditions applicable to corporations, or to joint stock associations, which may be quasi-corporations (*Hemphill* v. *Orloff*, 277 U. S. 537; *People ex rel. Winchester* v. *Coleman*, 133 N. Y. 279, 281), and those applicable to natural persons (*Flexner* v. *Farson*, 248 U. S. 289; *Hess* v. *Pawloski*, 274 U. S. 352). If all this be assumed, a different question arises when the creation of an irrevocable agency to accept service in any suit that may be brought against a resident is a condition of the privilege to engage in interstate commerce.

The Adams Express Company was an interstate carrier, and the merchandise lost in transit was an interstate shipment. A statute denying to such a carrier the right to engage in interstate business in the State of Rhode Island except upon compliance with a preliminary condition that in respect of service of process it must put

itself in the same position as if it were a resident is a denial of a privilege secured to it by the Federal Constitution (U. S. Const. art. I, § 8; art. IV, § 2; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 27; *Davis* v. *Farmers' Co-op. Equity Co.,* 262 U. S. 312; *International Text Book Co.* v. *Tone,* 220 N. Y. 313). Such a condition this statute has attempted to impose. There is more than the imposition of a duty, to be sanctioned, if it is not discharged, by the imposition of a fine. There is notice to the carrier that unless the condition is fulfilled, the right to do business will be forfeited altogether (*Sioux Remedy Co.* v. *Cope,* 235 U. S. 197; *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 364, 365; *International Text Book Co.* v. *Tone, supra,* at p. 319). The statute would not be saved, however, if it were to be read as establishing a regulation rather than a true condition (cf. *Lafayette Ins. Co.* v. *French,* 18 How. [U. S.] 404; *Connecticut Mut. Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *Commercial Mut. Acc. Co.* v. *Davis,* 213 U. S. 245, 255). This is so because even in that view the regulation is too broad. The carrier is directed under penalty of a fine, if not under that of exclusion from the State, to consent that it be served in every case in which it could be served if a resident. The Supreme Court has held that in respect of interstate commerce a non-resident corporation is not subject to suit, even though process be served on one who is a true agent, unless the cause of action grows out of the business transacted within the territory of the forum (*Davis* v. *Farmers Co-op. Equity Co., supra; Michigan Cent. R. R. Co.* v. *Mix,* 278 U. S. 493). In the power of attorney exacted by the statute of Rhode Island, no distinction is permitted between causes of action of one origin and causes of action of another. The consent is to be as broad as the range of possible litigation (*Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining & Milling Co.,* 243 U. S. 93).

The defendant carrier did not lose the right to terminate

the agency by yielding for a time to the mandate of the Legislature and filing a power of attorney as comprehensive as the statute. It might have stood upon its rights and refused to make any appointment except one confined to intrastate business. If it chose to do more, the appointment to the extent of the excess was a common-law appointment of an agent, resting upon consent, and, like any other such appointment, subject to recall. The recall became effective when revocation was announced. From that time on, the designation had spent its force in so far as it had virtue as a consensual act. Whatever virtue it retained, could have no source thereafter except the obligation, if any, inhering in the statute. The obligation failing, the revocation becomes effective according to its terms.

Nothing inconsistent with these views was held in *American Railway Express Co.* v. *Royster Guano Co.* (273 U. S. 274) or in *American Railway Express Co.* v. *Kentucky* (273 U. S. 269). In the first of these cases the transaction was one in intrastate commerce. The facts are stated fully in the opinion of the Court of Appeals of Virginia (141 Va. 602). What was said by McREYNOLDS, J., in the Supreme Court must, of course, be read in the light of that fundamental distinction. To this it must be added that the power of attorney was not exacted as a condition, and was not so broad as to subject the carrier in express terms to the liability of a resident. In the second case the decision was merely to the effect that the American Railway Express Company, the grantee of the defendant's property, assumed its liabilities.

Indecisive also are such cases as *Mutual Reserve Fund Life Assn.* v. *Phelps* (190 U. S. 147, 158) and *Hunter* v. *Mutual Reserve Life Ins. Co.* (218 U. S. 573). In these, as well as in others of like tenor, the court was dealing with corporations engaged not in interstate commerce, but in the business of insurance (cf. *Fidelity & Deposit Co.* v. *Tafoya*, 270 U. S. 426, 434).

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed with costs in all courts.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.